JESSIE R. WILLIAMSON *vs.* ARNOLD D. WILLIAMSON.

JANUARY 13, 1960.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J. This is a bill in equity to cancel a deed by which the complainant's husband conveyed to the respondent, their only child, his interest as joint tenant with his wife in certain real property located in the city of Paw-

tucket. Following a hearing by a superior court justice on bill, answer and proof, a decree was entered denying and dismissing the bill. The cause is before us on the complainant's appeal from that decree.

It is undisputed that complainant Jessie R. Williamson and Robert Williamson were married on June 12, 1906; that she and her husband acquired the first of the two parcels in dispute in 1915 and the second in 1943; that on August 24, 1956 the husband conveyed his interest as joint tenant in both parcels to respondent; that Robert Williamson executed his will on August 28, 1956; and that he died on February 1, 1957. It is further undisputed that although the father delivered the deed to respondent on the day it was executed, August 24, 1956, it was not recorded until the day after the grantor was buried; that the deed was drafted by a competent attorney; and that on learning the deed was not to be recorded immediately the attorney executed an affidavit of delivery on September 5, 1956.

The evidence is otherwise in conflict. The complainant testified that she and her husband acquired their first real estate, which was located on Lonsdale avenue in the city of Pawtucket, by purchase; that the consideration consisted of a down payment of $1,000, which was a gift to her from her mother; that the balance was represented by a mortgage which would be and was discharged by rental from the property; that she agreed to include her husband as joint tenant only after he had agreed not to mortgage or convey his interest without notifying her, and that he in fact made such an agreement.

She further testified that in 1943 when she and her husband acquired the second parcel in dispute, a dwelling located at the corner of Baldwin and Hancock streets in the city of Pawtucket, as joint tenants under the will of her sister Zina J. Cobley, her husband again agreed not to convey or encumber any of the property held by them as joint tenants without her consent; and that under her sister's

will she also inherited $3,000 which she never received, although her husband was executor. Exhibits, however, show that when her husband's account as executor was allowed it included payment of the sum of $2,980.80 to complainant as beneficiary, and that just prior to the accounting complainant deposited a total of $2,915.80 in her bank account for which deposit she offered no explanation.

The complainant testified repeatedly that for two years prior to his death her husband was physically and mentally infirm; that in the summer of 1956 he had no control of his bodily functions and was unable to carry on an intelligent conversation; that he was frequently unemployed and gave much of his earnings to his father; that her husband had never mentioned to her that he wanted to make provision for their son except on one occasion, ten years prior to his death, when he went to the hospital. She further testified that she never had more than two savings accounts although the exhibits show that from 1930 until the day of her testimony there were still four savings accounts open in her name, and that during the same period three others had been closed. Despite her testimony as to the agreement between herself and her husband, complainant also testified that it had always been her opinion that a joint tenant could not convey his interest without the signature of the other.

The complainant's testimony regarding her husband's employment record and earnings was somewhat corroborated by a fellow employee and by two of complainant's relatives as to his health. Doctor Earl J. Mara was also called by complainant, but his testimony failed to corroborate her assertions as to the advanced stage of her husband's physical infirmity, and significantly the doctor was not asked to give his opinion of Robert Williamson's mental capacity.

The respondent testified that on numerous occasions during the last ten years of his life the father discussed with

complainant the matter of making provisions in their wills for respondent and of adding his, respondent's, name as a joint tenant; that except in periods of economic depression in the early 1930's his father worked steadily; and that he was physically capable of assisting respondent in building new front steps on the Hancock street property. He denied that his father had lost control of his bodily functions, that he was incapable of carrying on an intelligent conversation, and that he was mentally incapable of knowing what he was doing.

The respondent's testimony on the issue of physical and mental capacity was corroborated by two attorneys, one who drafted the deed in question, and the other, respondent's cousin, who drew his uncle's will and also a deed to a third parcel of real estate of which Robert Williamson was the sole owner. The latter attorney testified to several conversations with complainant's husband regarding his desire to provide for respondent.

The complainant assigned sixteen reasons of appeal, but five of them, which are evidentiary in nature, having been neither briefed nor argued are deemed to be waived. *Mc-Allister* v. *Chase*, 65 R. I. 122. Her remaining reasons are inferentially contained within the first three, namely, that the decree is against the law, against the evidence and against the law and the evidence and the weight thereof. On such reasons she bases the follownig contentions that the trial justice erred: First, in holding that a husband during coverture may convey his interest as a joint tenant without the consent of his wife; second, in finding that there was no agreement between Robert Williamson and his wife that neither would convey or encumber their interest without the consent of the other; third, in finding that the grantor was not lacking in mental capacity to convey his interest; and fourth, in finding that respondent did not exercise undue influence as alleged.

In considering complainant's first contention the trial justice stated, "there can be no doubt that a joint tenant may convey his interest and thereby sever the joint tenancy." He cited *Williams* v. *Williams,* 68 R. I. 233, quoting at length therefrom. However, complainant argues that the case is otherwise where the conveyance is made by a husband thus depriving his spouse of the right of survivorship. This, she contends, is fraudulent as to her, since her right to support by her husband is adversely affected. She refers us to several citations in other jurisdictions, which we need not cite here, and to *Lacombe* v. *Lacombe,* 79 R. I. 287, and *Fuller* v. *Mowry,* 18 R. I. 424.

Upon examination we find that the authorities from other jurisdictions concerned cases in each of which the court found some element of fraud. The Rhode Island cases are in nowise applicable. We are of the opinion that the trial justice applied the correct rule of law, and this contention is without merit.

The trial justice found that there was no agreement between complainant and her husband. In giving his reasons for the conclusion reached, he discussed the oral and documentary evidence in detail. The complainant argues, however, that what little testimony respondent was able to offer in contradiction of complainant's positive testimony was completely negative in character and entitled to no weight. The trial justice commented that such agreements are frequently not made in the presence of others, and so he appears to have relied on the nature of complainant's testimony noting that complainant herself testified that she had always thought that a joint tenant could not convey his interest without the other tenant participating in the conveyance.

Having correctly ruled that a joint tenant is entitled to convey his interest to another and thus break the tenancy, he concluded that Robert Williamson's right to convey his interest to his son should not be forfeited on the basis of

an oral agreement not supported by a preponderance of clear and convincing proof. We cannot say that he was clearly wrong.

· The trial justice considered at length complainant's third contention that her husband was mentally incapable of executing the deed in favor of his son on August 24, 1956. He discussed the conflicting evidence in considerable detail and concluded that although Robert Williamson was unquestionably not as spry as he had been some twenty years earlier, he nevertheless knew what he wanted to do and did it. In reviewing the record before us, it appears that the trial justice was apparently impressed by the corroborating testimony of the two attorneys. In our opinion his conclusion that Robert Williamson was not lacking in mental capacity is not clearly wrong.

The complainant lastly contends that the trial justice erred and misconceived the law and the evidence in holding that her husband, the grantor, was not motivated by the exercise of undue influence on the part of his son. The trial justice reviewed the voluminous record compiled at the hearing and discussed in detail many aspects of the evidence bearing on his decision that respondent was not guilty of undue influence. We have examined the record in the light of the reasons given by him in reaching his conclusion and are of the opinion that he was not clearly wrong on this phase of complainant's case.

The complainant argues, however, that by reason of the enfeebled and infirm condition of respondent's father there developed such a confidential relationship as to place on respondent the burden of proving that the conveyance to him did not fall within the constructive trust doctrine, citing *Hoppin* v. *Tobey's Ex'rs*, 9 R. I. 42. There, as in the cases following the *Hoppin* case, the facts were such as to raise a strong suspicion that the grantee had attempted to benefit from a status of fiduciary in fact or of such a trustful and confidential nature as to be tantamount thereto

240

in a court of equity. The record in the instant case is barren of any ground for such suspicion. On the contrary the evidence clearly preponderates against the application of that doctrine here. It is obvious from all of the testimony that the grantor was concerned about his son's future and that exercising his independent judgment he executed the conveyance in question on his own initiative without suggestion, however slight, from the grantee.

Therefore we are of the opinion that the decision of the trial justice was correct and that all of the reasons of appeal should be overruled.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Albert Lanthier,* for complainant.

*Higgins, Cavanagh & Williamson, Joseph Cavanagh, Harold E. Adams, Jr.,* for respondent.